FIRST DIVISION

June 9, 2003

No. 1-02-0236

LAWRENCE S. BLOOM, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County

)

)

)

MUNICIPAL EMPLOYEES' ANNUITY AND )

BENEFIT FUND OF CHICAGO, and )

PHOEBE S. SELDEN, JUDITH C. RICE, )

JOHN K. GIBSON, JOSEPH MALATESTA )

and PETER BREJNAK, TRUSTEES OF THE )

MUNICIPAL EMPLOYEES' ANNUITY AND )

BENEFIT FUND OF CHICAGO, ) Honorable

) Julia M. Nowicki

Defendants-Appellees. ) Judge Presiding

JUSTICE McNULTY delivered the opinion of the court: 

Chicago aldermen are among the wide variety of Illinois municipal employees subject to state statutory provisions that  disqualify them from pension benefit eligibility if they are convicted of a felony relating to, arising out of or connected with their employment.  Plaintiff Lawrence S. Bloom, a former Chicago alderman, pleaded guilty to the charge of filing a false federal tax return, a felony.  Since, in the course of the negotiation and signing of his plea agreement, Bloom admitted that some of the funds falsely categorized on his return were amounts paid to him in exchange for his improper use of his public office, the trustees of his pension fund found his crime "arose out of or was in connection with" his position and denied his application for benefits.  Bloom appeals a circuit court order upholding that determination; we affirm.

Bloom, alderman of Chicago's Fifth Ward from 1979 to 1995, was charged with multiple crimes in a 14-count federal indictment issued in July 1997.  Although the indictment resulted from the "Silver Shovel" investigation of corruption in city government and accused Bloom of activities that would have constituted misuse of his public office, two counts of the indictment alleged that Bloom had filed false federal tax returns and did not include any claims of official misconduct.  

Bloom reached agreement with federal prosecutors on a plea of guilty to one of the tax charges: that he filed a return for his private real estate business, Shoreline Realty Company, which stated that the company had incurred a loss of $89 for the year 1994 although he knew that the company had in fact ended the year with material net taxable income.  As a result of the agreement, Bloom was convicted of filing a false return and the remaining counts of the indictment were dismissed.

In the sentencing process, prosecutors asked United States District Court Judge Milton Shadur for an enhancement of Bloom's penalty because his conviction "involved the abuse of a position of public trust."  Judge Shadur denied that request: "I am not agreeing with that position.  The offense of conviction as such, the violation of the tax law, did not involve an abuse of position of public trust just because some of the funds that were received and reported improperly had derived from circumstances in which other counts that have not served as a basis for a guilty plea could be characterized in that fashion."  Bloom  received a six-month prison sentence and a $5,000 fine.

In February and April of 1999, Bloom sent written requests for annuity payments to the entity that was to provide his pension benefits, the Municipal Employees' Annuity and Benefit Fund of Chicago (the Fund).  Neither request prompted payment from the Fund.  Instead, the Fund's board of trustees (the Board) conducted a hearing on Bloom's eligibility and issued a written determination that Bloom's conviction disqualified him from benefits pursuant to a provision of section 8-251 of the Illinois Pension Code (40 ILCS 5/8-251 (West 1998)): "None of the benefits provided for in this Article shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his service as a municipal employee."

The Board's order was based on several findings of fact, including:

"Lawrence S. Bloom was convicted of the felony of preparing and filing a false Federal Income Tax Return on which he reported income that he admitted he received for performing unlawful acts as an Alderman of the Fifth Ward;

In exchange for money, Mr. Bloom used his name, official position, and influence as Alderman of the Fifth Ward to assist John Christopher in obtaining and operating sites for his private rock-crushing business;

Mr. Bloom accepted money and used his position and influence as Alderman of the Fifth Ward to obtain street sweeping to clean up waste created by Mr. Christopher's private business;

Mr. Bloom accepted money and used his position and influence as Alderman of the Fifth Ward to contact another alderman on behalf of Mr. Christopher's private business, while misrepresenting and concealing Mr. Christopher's identity;

While failing to disclose his financial relationship with Mr. Christopher, Mr. Bloom accepted money and used his position and influence as Alderman of the Fifth Ward to deflect constituent complaints about Mr. Christopher's private business;

In exchange for money and in violation of his aldermanic position, Mr. Bloom assisted Mr. Christopher in obtaining snow removal contracts;

On a Federal Income Tax Return for a corporation owned and operated by Mr. Bloom, Mr. Bloom improperly reported the money he received from Mr. Christopher in violation of his aldermanic position;

The income which Mr. Bloom improperly reported on a Federal Income Tax Return arose out of or was obtained in connection with his employment as Alderman for the Fifth Ward."

The Board's ultimate "Conclusion of Law" was that "[t]he money that Mr. Bloom unlawfully obtained and improperly reported on a Federal Income Tax Return for which he was convicted of a felony arose out of or was in connection with his office as a Fifth Ward Alderman for the City of Chicago."

Bloom sought review of the Board's decision in the circuit court of Cook County pursuant to the Administrative Review Law (735 ILCS 5/3-101 
et seq. 
(West 1998)).  On cross-motions for summary judgment, the circuit court affirmed the Board's ruling, and this appeal followed.  In an appeal of a circuit court decision on a complaint for administrative review, our role is to review the administrative ruling rather than the circuit court's decision.  
Siwek v. Retirement Board of the Policemen's Annuity & Benefit Fund
, 324 Ill. App. 3d 820, 824 (2001), citing 
Calabrese v. Chicago Park District
, 294 Ill. App. 3d 1055, 1065 (1998).

Bloom contends that the applicability of section 8-251 of the Pension Code was conclusively determined by the judgment of conviction in the district court.  This contention is based upon the elements of the crime he was convicted of and upon Judge Shadur's explicit rejection of the suggestion that the offense constituted an abuse of a position of public trust.  In our view, this argument accurately recites the elements of Bloom's crime and the district court's factual findings but overstates their relevance to the pension eligibility issue.

In 
Devoney v. Retirement Board of the Policemen's Annuity & Benefit Fund for the City of Chicago
, 199 Ill. 2d 414 (2002), our supreme court reviewed a pension forfeiture decision governed by a policemen's pension statute containing disqualification language substantially identical to section 8-251.  The 
Devoney
 court's analysis began with a review of the elements underlying the disqualifying felony: "The federal indictment under which Devoney was charged does not identify him as a police officer, proof of his employment as a police officer was not necessary to establish his guilt, and his association with Chicago's police department is not mentioned in his written plea agreement with the United States Attorney.  For purposes of criminal liability under the governing federal statute, what mattered is the action he took, not his official status when he acted."  199 Ill. 2d at 422-23.  In this regard, Bloom's crime is directly analogous: the elements of his tax offense were that he filed a return that he knew to be false.  As in 
Devoney
, Bloom's crime required no proof relating to his official position.

But the 
Devoney
 court inquired further: "That being said, we nevertheless believe that the circumstances surrounding the crime establish that the offense was related to Devoney's work as a police officer."  199 Ill. 2d at 423.  The court ultimately affirmed pension board, circuit court and appellate court decisions ruling that Devoney's conviction disqualified him from pension eligibility.  
199 Ill. 2d at 424.  
Devoney
 thus demonstrates that analysis of the "relating to, arising out of or connected with" language of the pension forfeiture statutes is not concluded upon a showing that the disqualifying felony, by its own terms, does not call for proof of official misconduct.  In light of that demonstration, and in light of the absence of any evidence that the federal district court was presented with or intended to resolve the statutory pension disqualification question, we must reject Bloom's assertion that Judge Shadur's ruling was dispositive of the issue.

Bloom also contends that the only evidence of a connection between his felony conviction and his public office was provided by items not properly considered by the Board: the "Plea Agreement" and "Admissions For The Purpose Of Sentencing" documents he signed at the conclusion of his negotiations with federal prosecutors. We concur with his assessment of the significance of those documents.  The elements of Bloom's crime, as previously stated, required no proof of his official position.  His plea agreement, however, included the following admissions: 

"Specifically, in 1994, defendant received cash payments totaling $6000 from John Christopher and a Special Agent of the FBI, who are further identified in paragraph 1 of Count Two of the indictment, as well as $3000 from another individual.  Defendant then personally prepared the 1994 Shoreline Realty income tax return and entered the $9000 as rental income from a rental property owned by Shoreline.  He did so knowing at the time he made this entry that the $9000 was not rental income from that property.  He also knew that Shoreline Realty had losses regarding the rental property that exceeded its actual income and that under applicable laws and regulations those losses would be deductible only if there was additional income from that property against which the losses could be taken.  Entering the $9000 on Shoreline's return as rental income allowed Shoreline to deduct from its taxable income the otherwise non-deductible amounts of losses from the rental property, which reduced both Shoreline's and defendant's own taxable income."

Having thus provided a link between the Christopher payments and his crime, Bloom provided the remainder of the connection, the link between the Christopher payments and his public position, in the sentencing admissions:

"In 1994, in exchange for money, defendant agreed to use and did use his name, official position, and influence as an Alderman of the Fifth Ward to assist Christopher in obtaining and operating sites for rock-crushing, which included (1) making a request for City-funded services in the form of street-sweeping to clean up waste which Christopher represented to defendant had been created by Christopher's private business; (2) contacting another alderman on behalf of Christopher's business, while misrepresenting and concealing Christopher's identity; and (3) telling Christopher that he deflected constituent complaints about Christopher's business, all the while failing to disclose his financial relationship with Christopher and to the site.  During this period, defendant accepted $4000 in payments from Christopher in connection with his rock-crushing business, understanding that Christopher was making those payments in return for the official acts of defendant."

In arguing that these documents were inadmissible and thus improperly considered by the Board, Bloom claims that our supreme court's opinion in 
Devoney
 and Rule 11(e)(6)(D) of the Federal Rules of Criminal Procedure (Fed. R. Crim. Proc. 11(e)(6)(D)) each operate to prohibit the Board's reliance on those items.  We disagree.

In 
Devoney
, the plaintiff police officer was convicted of a federal mail fraud offense, and the district court, in determining an appropriate sentence, considered a prior incident of obstruction of justice that was admittedly related to the plaintiff's employment.  The 
Devoney
 court found the obstruction charge to be irrelevant to the plaintiff's pension eligibility claim, and from this finding, Bloom attempts to extrapolate a principle of broader application: that evidence of crimes other than the disqualifying felony cannot be considered by pension boards deciding the statutory "relating to, arising out of or connected with" issue.

The 
Devoney
 court, however, did not purport to follow or announce a rule limiting the nature of evidence that may be considered by municipal pension trustee boards.  Rather, the court ruled the 
plaintiff's obstruction conduct to be irrelevant only upon making two findings: that the conduct was "wholly unrelated to his culpability in this case" and that it "did not, itself, result in a felony conviction."  
Devoney
, 199 Ill. 2d at 423.  Though 
Devoney
 confirms that evidence of a crime that does not result in conviction cannot, by itself, disqualify a municipal employee from pension benefits under the forfeiture statutes, nothing in the 
court's analysis can be construed as a 
per se
 prohibition of other crime evidence in pension forfeiture proceedings, or as an edict that such evidence, if related to the allegedly disqualifying felony, may not be considered as proof of that felony's relationship to the employee's public position.  We are therefore unpersuaded by Bloom's 
claim that 
Devoney
 barred the Board's consideration of his plea agreement and sentencing admissions.

We are similarly unpersuaded by Bloom's contention that exclusion of his admissions is required by Rule 11(e)(6)(D) of the Federal Rules of Criminal Procedure.  In pertinent part, that rule provides: "Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions: *** (D) any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn." Fed. R. Crim. Proc. 11(e)(6)(D).

Bloom apparently interprets the rule to require exclusion of statements that do not by themselves result in a plea of guilty.  The plain language of the rule suggests otherwise, however: it dictates an inquiry into whether the discussions with prosecutors led to a guilty plea, not whether an individual statement itself produced that result.  In the instant case, Bloom's discussions with prosecutors clearly led to a guilty plea that was not subsequently withdrawn.  In our view, this fact renders Rule 11(e)(6)(D) inapplicable to all statements made in the course of his discussions, even if those statements described criminal conduct that did not result in an additional guilty plea.  We conclude that the rule, like 
Devoney
, offers no basis for exclusion of Bloom's plea agreement and sentencing statements. Finding no other barrier to their admissibility, we hold that they were properly considered by the Board.  

In the absence of a felony requiring proof of official misconduct, Illinois courts determining the applicability of the pension forfeiture statutes have found that "the pivotal inquiry is whether a nexus exists between the employee's criminal wrongdoing and the performance of his official duties."  
Devoney
, 199 Ill. 2d at 419, citing 
DiFiore v. Retirement Board of the Policemen's Annuity & Benefit Fund
, 313 Ill. App. 3d 546, 551 (2000).  We disagree with Bloom's contention that no nexus has been established in the instant case.

In 
Devoney
, the nexus was based on a "but for" link between crime and public employment that Bloom claims is absent here, The traditional view of the "but for" test is that the test is not met if the resulting event would have occurred even in the absence of the questioned cause.  
Thacker v. UNR Industries, Inc.
, 151 Ill. 2d 343, 354 (1992). In his plea agreement, Bloom admitted that he falsified his tax return in two respects unrelated to the improper payments received from Christopher: additional sums paid to him by an unidentified individual and reportable as ordinary income were also listed as Shoreline rental income; and a housekeeper who cleaned Bloom's personal residence was paid with Shoreline checks and her wages were deducted as a business expense despite the fact that she did no work for the company.  Since these admissions establish bases for Bloom's conviction that are independent of his public office, they would appear to negate a "but for" connection between his position and his crime.  

The 
Devoney
 court, however, though approving a police pension board's "but for" approach, did not mandate the application of that test in every nexus analysis: "
Based upon these circumstances,
 there was ample ground for 
the Retirement Board's finding 
that ‛but for the fact that Devoney was a Police Officer of high rank,' he ‛would not have been in a position or selected to participate in the scheme ***.'" (Emphasis added.) 
Devoney
, 199 Ill. 2d at 423.  Other causation formulations remain viable in Illinois, both within and outside the pension forfeiture context.

In outlining the parameters of our proximate cause jurisprudence, Illinois courts have recognized an alternative means of analyzing the existence of a causal link:  the "substantial factor" test, under which the link is established if the questioned cause "was a material element and a substantial factor" in bringing about the subsequent occurrence.  
Thacker
, 151 Ill. 2d at 354-55.   

In 
Goff v. Teachers' Retirement System
, 305 Ill. App. 3d 190 (1999), 
appeal denied, 
185 Ill. 2d 623 (1999), the appellate court, in attempting to define the "relating to, arising out of or in connection with" language of the forfeiture statutes, adopted an approach parallel to the "substantial factor" analysis.  The court observed that the forfeiture statutes' terms, in their customary application, were "very broad," and cited an example from the employment injury area: "'[A]n injury can be said to arise out of one's employment if its origin is in 
some way
 connected with the employment so that there is a causal connection between the employment and the *** injury.'"  (Emphasis in original.) 305 Ill. App. 3d at 195, quoting 
Consolidated Rail Corp. v. Liberty Mutual Insurance Co.
, 92 Ill. App. 3d 1066, 1068-69 (1981). 

The 
Goff
 court, in review of a denial of benefits to a teacher convicted of aggravated criminal sexual abuse, focused its analysis on the means by which the claimant used his position to facilitate his crimes.  His in-school access to one victim allowed him to intensify his efforts to entice the youth to engage in the prohibited liaison and to encourage the victim's participation in the out-of-school activities where the crimes eventually took place.  305 Ill. App. 3d at 193.  The second victim reported that the claimant's position as school principal was a factor in inducing his consent to improper sexual activities.  305 Ill. App. 3d at 195.  

The court was clearly presented with evidence that the 
Goff
 claimant's position was not the sole cause of his crimes and just as clearly unpersuaded by this evidence: "Goff's ‛service as a teacher' was merely one of the many tools that he used to sexually abuse his victims.  It is of no consequence that the felonies for which Goff was convicted were connected both to his ‛service as a teacher' and to other endeavors."  305 Ill. App. 3d at 196.  The court found the necessary connection between the claimant's crimes and his position, and affirmed the denial of his pension benefits.  305 Ill. App. 3d at 196-97.

In our view, these precedents indicate that the "but for" causation test is merely one acceptable method of establishing the nexus between crime and public employment required for forfeiture under the pension statutes and that other means of establishing this link are equally permissible.  

Application of these principles to the facts of the instant case compels the finding that Bloom's felony conviction forfeited his pension benefits.  His admissions indicate that the improper payments from Christopher were material elements and substantial factors in his resulting tax conviction.  Bloom's felony, like those of the 
Goff
 claimant, is clearly connected to his public service as well as other factors.  As in 
Goff
, we hold that the existence of the connection to other factors does not negate the connection to Bloom's office.  On these facts, the Board's denial of his benefits was proper, and the circuit court's judgment in its favor was appropriate.  

Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed.

GORDON, P.J., and O'MALLEY, J., concur.