SECOND DIVISION
FILED: June 29, 2010

No. 1-09-3595

| | | |
|---|---|---|
| CHARLES ROMANO, | ) | APPEAL FROM THE |
| | ) | CIRCUIT COURT OF |
| Plaintiff-Appellant, | ) | COOK COUNTY |
| | ) | |
| v. | ) | |
| | ) | |
| THE MUNICIPAL EMPLOYEES ANNUITY AND | ) | |
| BENEFIT FUND OF CHICAGO, THE BOARD OF | ) | |
| TRUSTEES OF THE MUNICIPAL EMPLOYEES | ) | 09 CH 26406 |
| ANNUITY AND BENEFIT FUND OF CHICAGO, | ) | |
| PETER BREJNAK, JOSEPH M. MALATISTA, | ) | |
| STEPHANIE D. NEELY, STEVEN J. LUX, and | ) | |
| JOHN K. GIBSON, President and Members | ) | |
| of the Board of Trustees of the | ) | |
| Municipal Employees Annuity and Benefit | ) | |
| Fund of Chicago, | ) | HONORABLE |
| | ) | STUART E. PALMER, |
| Defendants-Appellees. | ) | JUDGE PRESIDING. |

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Charles Romano, again appeals from a judgment of the Circuit Court of Cook County, confirming a decision of the Board of Trustees of the Municipal Employees Annuity and Benefit Fund of Chicago (Board) which found that, as a consequence of his conviction of a felony, federal mail fraud, he forfeited all benefits he may have had as a participant in the Municipal Employees Annuity and Benefit Fund of Chicago (Fund). For the

reasons which follow, we reverse the judgment of the circuit court and the decision of the Board.

We set forth the majority of the facts relevant to the disposition of this case in our prior decision. See Romano v. Municipal Employees Annuity and Benefit Fund of Chicago, 384 Ill. App. 3d 501, 501-503, 894 N.E.2d 151 (2008) (hereinafter referred to as Romano I). We, again, restate those facts for the convenience of the reader.

The plaintiff, an operating engineer in the employ of the City of Chicago (City), pled guilty to a felony, federal mail fraud, arising from his participation in a scheme to pay bribes to Donald Tomczak, the First Deputy Commissioner of the City's Department of Water, in exchange for Tomczak directing trucking business under the City's Hired Truck Program (HTP) to Garfield Trucking, Inc. (Garfield). As we noted in Romano I, the Plea Agreement entered into between the plaintiff and the United States Attorney for the Northern District of Illinois sets forth the following facts giving rise to the plaintiff's indictment.

"In or around late 2000, the plaintiff was asked by Michael Harjung, a former employee of the City's Department of Water, to participate in the formation and operation of Garfield, a trucking business. Harjung told the plaintiff that, once formed, Garfield would have a

2

steady stream of business from the City's HTP because he, Harjung, had an ongoing payment arrangement with Tomczak involving another trucking company. Harjung told the plaintiff that, in exchange for the payment of $75 per week, Tomczak would select Garfield's truck for participation in the HTP. After hearing Harjung describe his arrangement with Tomczak, the plaintiff agreed to participate in Garfield and made an initial investment of $10,000 for the purpose of purchasing a truck that would be used in the HTP by Garfield. As a City employee, the plaintiff was prohibited from doing business with the City.

Garfield began receiving HTP business from the City's Department of Water in April 2002. The business was arranged in communications between Harjung and Tomczak. Between April 2002 and January 2004, Garfield had one truck that worked exclusively and regularly for the HTP.

The plaintiff never paid Tomczak any money directly, and he never accompanied Harjung when Harjung paid Tomczak. The plaintiff's principal operating role at Garfield was to pick up mail, including City warrants sent to Garfield in payment for HTP work, and to maintain

3

the truck. The plaintiff invested an additional $10,000 which was used by Garfield for operational purposes.

    The Plea Agreement provides that, in pleading guilty, the plaintiff admitted the facts set forth in the agreement and that those facts established the offense of mail fraud beyond a reasonable doubt." Romano I, 384 Ill. App. 3d at 502.

Following the plaintiff's conviction, proceedings were instituted before the Board to declare him ineligible for pension benefits under Article 8 of the Pension Code (Code) (40 ILCS 5/8-101 et seq. (West 2004)). The Fund filed a motion for summary judgment supported by the plaintiff's felony conviction and the admissions made in his Plea Agreement, arguing that, pursuant to the provisions of Section 8-251 of the Code (40 ILCS 5/8-251 (West 2004)), the plaintiff is ineligible to receive pension benefits from the Fund. The Board granted the motion, finding that "[t]here is no issue of material fact that *** [the plaintiff] was convicted of a felony relating to or arising out of or in connection with his service as a municipal employee."

The plaintiff sought a review of the Board's decision in the Circuit Court of Cook County pursuant to the Administrative Review Law (735 ILCS 5/3-101 et seq. (West 2004)). The circuit court confirmed the Board's decision, and the plaintiff appealed. Romano

4

No. 1-09-3595

I, 384 Ill. App. 3d at 502-03. We reversed the circuit court's order and the summary judgment entered by the Board, and we remanded the matter back to the Board for further proceedings. Romano I, 384 Ill. App. 3d at 505.

On remand, the Board held a hearing at which the plaintiff was the only witness, and his Plea Agreement was received in evidence. In addition to the facts admitted by the plaintiff in his Plea Agreement as set forth above, he testified that Mark LeBaron, his supervisor, gave Harjung his phone number, and that it was Harjung who contacted him and proposed that he participate in the formation of Garfield. According to the plaintiff, he and Harjung had worked together for the City 20 years earlier.

The plaintiff admitted that, in his duties for the City, he would use trucks that were in the HTP on a daily basis. He denied, however, that he ever had anything to do with ordering trucks from the HTP or that the truck owned by Garfield was ever sent to any job that he was working on. He also denied that, as part of his duties for the City, he did anything whatever to assist Garfield in getting business or in working for the City.

Following the hearing, the Board issued a written decision, finding that the plaintiff had been convicted of a felony that is "related to, arose out of, or was in connection with his employment with the City of Chicago," and, as a consequence, the Board held

5

No. 1-09-3595

that he had forfeited all benefits that he may have earned as a participant in the Fund.

The plaintiff, again, sought a review of the Board's decision in the Circuit Court of Cook County pursuant to the Administrative Review Law. The circuit court confirmed the Board's decision, and this appeal followed.

In urging reversal, the plaintiff argues that the Board's decision is against the manifest weight of the evidence. He contends that there is no evidence in the record supporting the Board's finding that the felony of which he was convicted is "related to, arose out of, or was in connection with his employment with the City." The plaintiff concludes, therefore, that, in the absence of any nexus between his employment with the City and the felony of which he was convicted, the Board erred in holding that he forfeited the benefits which he earned as a participant in the Fund.

We begin our analysis by articulating the standard of review. As in any review of an administrative decision, we accept the Board's factual findings as prima facie true and correct (735 ILCS 5/3-110 (West 2008); City of Belvidere v. Illinois State Labor Relations Board, 181 Ill. 2d 191, 204, 692 N.E.2d 295 (1998)), and we will not reverse those findings unless they are against the manifest weight of the evidence (Terrano v. Retirement Board of the

6

_Policemen's Annuity and Benefit Fund of the City of Chicago_, 315 Ill. App. 3d 270, 274, 733 N.E.2d 905 (2000)).

A factual finding of an administrative agency is against the manifest weight of the evidence only if an opposite conclusion is clearly evident. _Abrahamson v. Illinois Department of Professional Regulation_, 153 Ill. 2d 76, 88, 606 N.E.2d 1111 (1992). The fact that a conclusion opposite that reached by the agency is reasonable or that a reviewing court might have ruled differently will not justify reversing the findings of an administrative agency. _Abrahamson_, 153 Ill. 2d at 88. When, however, the decision of an administrative agency is against the manifest weight of the evidence, it is the court's duty to reverse it. _Zien v. Retirement Board of the Firemen's Annuity & Benefit Fund of Chicago_, 236 Ill. App. 3d 499, 507, 603 N.E.2d 777 (1992).

Section 8-251 of the Code provides, in relevant part, as follows:

> "None of the benefits provided for in this Article [Article 8] shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his service as a municipal employee." 40 ILCS 5/8-251 (West 2004).

In _Devoney v. Retirement Board of the Policemen's Annuity & Benefit Fund for the City of Chicago_, 199 Ill. 2d 414, 419, 769

7

N.E.2d 932 (2002), our supreme court held that, in applying a pension disqualification statute such as this, the pivotal inquiry is whether there is a nexus between the felony of which the employee has been convicted and the performance of his official duties. Breach of duty to the municipality is not what triggers disqualification; rather, it is the existence of a connection between the actual felony conviction and the employee's duties. Devoney, 199 Ill. 2d at 419. That is to say, there must be a "clear and specific connection between the felony committed and the participant's employment" to justify such a forfeiture. Taddeo v. Board of Trustees of the Illinois Municipal Retirement Fund, 216 Ill. 2d 590, 597, 837 N.E.2d 876 (2005).

The supreme court in Devoney found that the nexus requirement was satisfied because "but for the fact that Devoney was a Police Officer of high rank, he would not have been in a position or selected to participate in the scheme to defraud." Devoney, 199 Ill. 2d at 423. In this case, the Board argues that the evidence of record supports its finding that, "[b]ecause of *** [the plaintiff's] position as a City employee, he was asked by Harjung to participate with him in Garfield, a company that they formed to obtain HTP business," and as consequence, the nexus between the felony of which the plaintiff was convicted and his employment necessary to support a forfeiture of his right to any benefits as

8

a participant in the Fund was satisfied. The Board also points to other facts which it contends establish that nexus, namely: that the plaintiff's job with the City gave him access to the HTP, the knowledge of whom to bribe, and information as to the scope of the HTP program; that he used HTP trucks on a daily basis in his City employment; and that LeBaron, a co-City worker with the plaintiff, supplied Harjung with the plaintiff's telephone number.

We have reviewed the Plea Agreement and the plaintiff's testimony before the Board, and we do not believe that the evidence establishes a clear and specific connection between the felony of which the plaintiff was convicted and his municipal employment. Nothing in that Plea Agreement speaks to the reason why the plaintiff was asked by Harjung to participate in Garfield. Nor are there any facts in the Plea Agreement which would support an inference that the relationship between the plaintiff and Harjung or any of the other co-conspirators was cultivated because the plaintiff was an employee of the City or that he had ever used his position as a City employee for the benefit of Harjung or the other co-conspirators. See Devoney, 199 Ill. 2d at 423. In his testimony before the Board, the plaintiff stated that, from the time that he was first contacted by Harjung and throughout the entire scheme, no one ever suggested that he had been asked to participate in Garfield because he was a City employee. The fact

9

that the plaintiff and Harjung worked together for the City some 20 years before the events giving rise to the plaintiff's conviction explains how they came to be acquainted, it does not explain why the plaintiff was asked by Harjung to participate in a scheme to bribe Tomczak or establish that his status as a City employee was in any way relevant to his participation in the felonious scheme. The notion that whatever relationship the plaintiff and Harjung developed when they worked together for the City some 20 years earlier constitutes a substantial connection between the plaintiff's service for the City and his felony conviction or that the relationship satisfies the requisite nexus necessary to a forfeiture of benefits under section 8-251 of the Code is pure sophistry. Further, the fact that LeBaron, the plaintiff's supervisor, gave Harjung the plaintiff's phone number explains how Harjung located the plaintiff; but, again, it does not explain why the plaintiff was asked by Harjung to participate in the felonious scheme.

There is no disputing the fact that, while employed by the City, the plaintiff participated in a scheme with Harjung, a former City employee, pursuant to which Tomczak, the First Deputy Commissioner of the Water Department, was paid bribes for directing HTP business to Garfield. However, there is no evidence, either in the admissions contained in the Plea Agreement or in the

10

plaintiff's testimony, which could support the conclusion that the felonious scheme was the product of the plaintiff's status as a City employee or that he used his position as a City employee to facilitate the scheme. The plaintiff admitted that he regularly used trucks that were retained by the City as part of the HTP in his work, but he denied that he had anything to do with ordering those trucks. He also denied that the truck owned by Garfield was ever used on a job where he was working. The plaintiff's testimony in this regard was unrebutted.

The circumstances of this case are readily distinguishable from those of the cases upon which the Board relies; the very facts supporting the requisite nexus between the employees felony convictions and their employment differ. In Devoney, the supreme court found that the plaintiff's participation in the fraudulent scheme of which he was convicted was the product of his status as a police officer. The court's conclusion in this regard was based upon its finding that he would not have been selected to participate in the scheme "but for" the fact that he was a high ranking police officer, as evidenced by the use of his position to benefit his co-conspirator "in a variety of ways over a protracted period of time." Devoney, 199 Ill. 2d at 423-24. In this case, there is no evidence that the plaintiff had ever used his position as a City employee to benefit Harjung, or any other co-conspirator,

11

either before or after the time that he was solicited to participate in Garfield and the scheme to bribe Tomczak, and there is no evidence in the record that he was selected to participate in the felonious scheme because of his position with the City.

In Bauer v. State Employees' Retirement System of Illinois, 366 Ill. App. 3d 1007, 852 N.E.2d 497 (2006), the court found that, "but for" the plaintiff's former position as the State's Inspector General, he would not have been in a position to attempt to persuade his former secretary to conceal or destroy documents relevant to a federal investigation; thus, establishing a nexus between his felony conviction for obstruction of justice and his employment. Bauer, 366 Ill. App. 3d at 1020. In contrast, there is no evidence in this case that the plaintiff's service as a municipal employee made the bribery of Tomczak possible, or in any way contributed to Garfield's participation in the HTP. Rather, the Plea Agreement reflects that, when he solicited the plaintiff's participation, Harjung told the plaintiff that he already had an ongoing payment arrangement with Tomczak involving another trucking company.

In Siwek v. Retirement Board of the Policemen's Annuity and Benefit Fund, 324 Ill. App. 3d 820, 756 N.E.2d 374 (2001), the plaintiff, a police officer, was convicted of two felony drug offenses. On appeal, this court found that Siwek's specialized

12

knowledge gained as a police officer and his relationship with a police informant, which were used to set up the personal drug transactions underlying his felony convictions, related to his service as a police officer, justifying forfeiture of his pension benefits. Siwek, 324 Ill. App. 3d at 829. In this case, the plaintiff's Plea Agreement plainly states that: it was Harjung who devised the scheme to bribe Tomczak in exchange for selecting Garfield for participation in the HTP; Garfield's receipt of HTP business was arranged between Harjung and Tomczak; and it was Harjung who delivered the bribes to Tomczak, never the plaintiff. Additionally, the plaintiff testified that, in the discharge of his job duties, he never ordered trucks to a job site from the HTP, and he never did anything as part of his job duties to assist Garfield in getting City business. There is no contrary evidence in the record. According to the Plea Agreement, other than providing money to purchase a truck and for operating purposes, the plaintiff's principal role at Garfield was picking up mail and maintaining the truck. Nothing in the record supports an inference that any knowledge gained by the plaintiff as a City employee or any of his activities as a City employee contributed to the activities of Garfield, its participation in the HTP, or the bribing of Tomczak.

In Bloom v. Municipal Employees' Annuity and Benefit Fund of

13

Chicago, 339 Ill. App. 3d 807, 791 N.E.2d 1254 (2003), a former Chicago alderman pled guilty to filing a false federal tax return in which he intentionally miscategorized funds paid to him for the improper use of his public office.  Bloom was denied pension benefits under section 2-251 of the Code because his improper receipt of payments for performing aldermanic services were material and substantial factors in his resulting felony tax conviction. Bloom, 339 Ill. App. 3d at 816.

In Goff v. Teachers' Retirement System of the State of Illinois, 305 Ill. App. 3d 190, 713 N.E.2d 578 (1999), a retired teacher pled guilty to the aggravated sexual abuse of children attending the school in which he worked.  Although the conduct underlying the convictions never took place on school property, Goff used his position as a teacher to take sexual advantage of his victims, and, as a consequence, the court found that he "used and abused" his service as a teacher to perpetrate the felonies of which he pled guilty, justifying forfeiture of his pension benefits.  Goff, 305 Ill. App. 3d at 195-96.   Again, however, unlike the facts in Bloom and Goff, nothing in the record supports a conclusion that any activity on the part of the plaintiff as a City employee contributed to the felonious scheme, perpetuated the behavior of which he was convicted, or formed a factor in bringing about that conviction.

14

Finally, in <u>Katalinic v. Board of Trustees of the Municipal Employees', Officers', and Officials' Annuity and Benefit Fund</u>, 386 Ill. App. 3d 922, 898 N.E.2d 243 (2008), the count found that, "but for" the plaintiff's former job as a deputy commissioner of the City's department of streets and sanitation, he would not have been in a position to become involved in the hiring and promotion scheme which led to his conviction for mail fraud, and his employment with the City was a substantial factor in bringing about the conduct underlying his conviction. <u>Katalinic</u>, 386 Ill. App. at 929-30. In this case, there is no evidence that the plaintiff's position with the City was a factor in his recruitment by Harjung, nor is there any evidence that his position aided the furtherance of the scheme.

As noted earlier, on review the Board's factual findings are to be accepted as <u>prima</u> <u>facie</u> true and correct. Nevertheless, they must still be supported by evidence, either direct or circumstantial. As there is no direct evidence supporting the Boards conclusion that the plaintiff was selected to participate in the scheme giving rise to his conviction because of his position as a City employee, it must be an inference based upon circumstantial evidence. The Board seemingly asserts that factors such as the plaintiff and Hartung having work worked together for the City, and LeBaron, the plaintiff's supervisor, having given Hartung the plaintiff's telephone number constitute sufficient circumstantial

15

No. 1-09-3595

evidence to support the inference it drew.  We disagree.

To be sufficient to support an inference, circumstantial evidence must show a probability of the existence of the fact to be inferred.  Pyne v. Witmer, 129 Ill. 2d 351, 369, 543 N.E.2d 1304 (1989).  Although the circumstantial evidence need not exclude all other possible inferences, it must be of such a nature and so related as to make the conclusion reached the more probable.  Pyne, 129 Ill. 2d at 369.  Where from the proven facts the non-existence of the fact to be inferred appears to be just as probable as its existence, then the conclusion that it exists is a matter of speculation, surmise, and conjecture.  Consolino v. Thompson, 127 Ill. App. 3d 31, 34, 468 N.E.2d 422 (1984).

In this case, it is certainly possible that Harjung invited the plaintiff to participate in the felonious scheme because of the plaintiff's City employment, but it is not probable.  Before inviting the plaintiff to participate in the scheme which led to his conviction, Harjung already had an ongoing payment arrangement with Tomczak for another trucking company involved in the HTP. More importantly, there is no evidence in this record that the plaintiff ever used his position with the City to further the scheme.  The plaintiff invested money, picked up Garfield's mail, and maintained the truck; nothing more.

In the absence of sufficient circumstantial evidence to

16

support an inference that the plaintiff was chosen to participate in the scheme giving rise to his conviction because of his position as a City employee and the absence of any evidence that the plaintiff used his position as a City employee to further the scheme, the Board's conclusion that the plaintiff's felony conviction is "related to, arose out of, or was in connection with his employment with the City of Chicago," is against the manifest weight of the evidence.

The question is not whether the plaintiff, a City employee, was convicted of a felony; the question is whether the evidence supports a finding that he was convicted of a felony "relating to or arising out of or in connection with his service as a municipal employee." 40 ILCS 5/8-251 (West 2004). Based upon the foregoing analysis, we find that the evidence before the Board does not support such a finding. As a consequence, we reverse the judgment of the circuit court and the decision of the Board.

Reversed.

CUNNINGHAM, P.J., and KARNEZIS, J., concur.