# Illinois Official Reports

## Appellate Court

*Kalven v. City of Chicago*, 2014 IL App (1st) 121846

| | |
|---|---|
| Appellate Court Caption | JAMIE KALVEN, Plaintiff-Appellant and Cross-Appellee, v. THE CITY OF CHICAGO and THE CHICAGO POLICE DEPART-MENT, Defendants-Appellees and Cross-Appellants. |
| District & No. | First District, First Division<br>Docket Nos. 1-12-1846, 1-12-1917 cons. |
| Filed | March 10, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action under the Freedom of Information Act seeking documents maintained by defendant police department related to complaints of police misconduct, the appellate court found that the documents listing the police officers with the most complaints and referred to as repeater lists and the documents related to completed investigations into allegations of misconduct against five officers and called complaint register files were subject to disclosure; therefore, the trial court's entry of summary judgment for plaintiff as to the repeater lists was affirmed and the entry of summary judgment for defendant as to the complaint register files was reversed, but the cause was remanded to allow the trial court to resolve defendants' claim that some portions of the complaint register files should be redacted pursuant to the deliberative process exemption and to revisit the denial of plaintiff's request for attorney fees in view of the reversal of the judgment for defendants on the issue of the complaint register files. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-51396; the Hon. Neil H. Cohen, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded with directions. |

| Counsel on Appeal | Craig Benson Futterman, F. Italia Patti, and Saul D. Cohen, all of Edwin F. Mandel Legal Aid Clinic, of Chicago, for appellant. |
| | |
| | Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Justin A. Houppert, Assistant Corporation Counsel, of counsel), for appellees. |

| Panel | PRESIDING JUSTICE CONNORS delivered the judgment of the court, with opinion.
Justice Cunningham concurred in the judgment and opinion.
Justice Delort specially concurred in the judgment, with opinion. |

**OPINION**

¶ 1    Plaintiff Jamie Kalven filed suit against defendants Chicago police department (CPD) and City of Chicago pursuant to the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2010)), seeking the disclosure of certain documents related to complaints of police misconduct. Plaintiff and defendants filed cross-motions for summary judgment, and the circuit court granted and denied both motions in part. Plaintiff now appeals from the court's ruling that certain documents are exempt from FOIA disclosure and from the denial of attorney fees. Defendants appeal from the court's ruling that certain lists are not exempt from FOIA disclosure. We affirm in part and reverse in part and remand for further proceedings.

¶ 2    On November 16, 2009, plaintiff submitted FOIA requests to CPD seeking two types of documents: (1) lists of Chicago police officers who amassed the most misconduct complaints (referred to as Repeater Lists or RLs); and (2) complaint register files (referred to as CRs) related to CPD's completed investigations into allegations of police misconduct against five officers. On December 8, 2009, CPD denied the requests. Plaintiff filed this lawsuit on December 22, 2009, seeking an injunction requiring CPD to produce the documents.

¶ 3    The CRs are CPD's records of investigations into complaints made by citizens against police officers. Upon receiving a citizen complaint, CPD generally creates records cataloging the investigation into any officer's alleged misconduct. The CR files consist of the complaint itself and documents created during the investigation of the complaint.

¶ 4    The RLs, in contrast, were first compiled by defendants as part of Bond v. Utreras, No. 04 C 2617 (N.D. Ill.) (hereinafter, *Bond*), and Moore v. City of Chicago, No. 07 C 5908 (N.D. Ill.) (hereinafter, *Moore*). The *Bond* RLs identify police officers who accumulated the most misconduct complaints between 2001 and 2006. The *Moore* RLs identify officers who received more than five complaints from May 2002 to December 2008, as well as officers who were accused of excessive force more than five times during the same time period. These lists were retrieved from CPD's complaint register management system and were produced in response to court-ordered civil discovery in each case. The *Bond* lists were ordered preserved for ease of production in this case by the circuit court after *Bond* was settled. The *Moore* lists

were produced as court-ordered discovery in that case and then saved to CPD's computer system.

¶ 5 Plaintiff, a reporter who was in the midst of publishing articles on alleged police misconduct, sought leave to intervene in *Bond* in order to obtain access to the RLs and CRs at issue in that case. The federal court granted plaintiff's motion, but the Seventh Circuit stayed that order pending defendants' appeal. See *Bond v. Utreras*, 585 F.3d 1061, 1065 (7th Cir. 2009). The Seventh Circuit ultimately ruled that plaintiff lacked standing to intervene in *Bond*, but noted that plaintiff could seek the same documents from defendants under the Illinois Freedom of Information Act. See *Bond*, 585 F.3d at 1076 n.10.

¶ 6 On November 16, 2009, plaintiff submitted FOIA requests to CPD for the RLs and the CRs relating to 17 Chicago police officers, including the 5 officers who were defendants in *Bond*. CPD, however, denied plaintiff's request. In response to the denial, plaintiff filed this lawsuit against defendants on December 22, 2009.

¶ 7 In the circuit court, the parties filed cross-motions for summary judgment. In regard to the CRs, the court found that they were exempt from disclosure under FOIA because they are "[r]ecords relating to a public body's adjudication of *** disciplinary cases." 5 ILCS 140/7(1)(n) (West 2010). Regarding the RLs, the circuit court found that section 7(1)(m), which exempts documents prepared in anticipation of litigation for attorneys representing a public body, did not exempt the RLs from disclosure. See 5 ILCS 140/7(1)(m) (West 2010). The circuit court further found that the RLs were public records subject to disclosure under section 2(c). See 5 ILCS 140/2(c) (West 2010). Finally, the circuit court found that plaintiff, having succeeded on his claim for the RLs but failing on his claim for the CRs, did not substantially prevail in the proceeding as required under section 11(i) and thus was not entitled to attorney fees. See 5 ILCS 140/11(i) (West 2010). Both parties have now appealed.

¶ 8 The threshold question that we must resolve is which version of FOIA applies to this case. Plaintiff requested the CRs and RLs from defendant in late 2009 and, after CPD denied the request, plaintiff filed suit on December 22, 2009. While the case was pending in the circuit court, however, an amended version of FOIA went into effect on January 1, 2010. Plaintiff contends that we should apply the 2009 FOIA statute because it was in effect when the FOIA request was denied by defendants. In contrast, defendants argue that we should apply the 2010 version of the statute.

¶ 9 FOIA provides that when a person is denied access to inspect or copy any public record by a public body regarding the affairs of government and the official acts and policies of those who represent the public, that person may file suit in circuit court for injunctive or declaratory relief. See 5 ILCS 140/11(a) (West 2010). The circuit court has the authority to determine whether the records are subject to FOIA and, if so, whether they are exempt from disclosure. See 5 ILCS 140/11(f) (West 2010). Moreover, the circuit court has the authority to order the production of any public records improperly withheld from the person seeking access. See 5 ILCS 140/11(d) (West 2010).

¶ 10 Injunctive and declaratory relief are prospective forms of relief because they are concerned with restraining or requiring future actions rather than remedying past harms. See, *e.g.*, *PHL, Inc. v. Pullman Bank & Trust Co.*, 216 Ill. 2d 250, 267-68 (2005) (discussing the difference between an injunction and present claims for damages in the context of sovereign immunity). When claims are prospective, a court must apply the law that is in effect at the time of its decision. See, *e.g.*, *Bartlow v. Costigan*, 2014 IL 115152, ¶¶ 30-31 (in the context of a suit seeking a declaration that a statute is unconstitutional and an injunction prohibiting its

enforcement, amended version of the statute must be examined in order to determine whether the plaintiff is entitled to relief); see also *Forest Preserve District v. City of Aurora*, 151 Ill. 2d 90, 94-95 (1992) (same). In this case, although the 2009 FOIA statute was in effect when plaintiff filed suit, the statute has since been amended. In order to determine whether plaintiff is entitled to production of the documents, we must therefore apply the version of the statute that is currently in effect.

¶ 11    Turning to the merits of this case, defendants claim that the CRs are exempt under two FOIA provisions.[1] First, defendants argue that section 7(1)(n) exempts the CRs from disclosure. That section exempts:

> "[r]ecords relating to a public body's adjudication of employee grievances or disciplinary cases; however, this exemption shall not extend to the final outcome of cases in which discipline is imposed." 5 ILCS 140/7(1)(n) (West 2010).

Defendants argue that CRs are "related to" adjudicatory proceedings and that the phrase "related to" must receive a broad interpretation. Defendants further contend that the provision exempts not only the adjudications themselves, but also exempts from disclosure all records that relate to the adjudications.

¶ 12    We consider issues of statutory construction *de novo*. *People ex rel. Madigan v. Kinzer*, 232 Ill. 2d 179, 184-85 (2009). "The fundamental objective of statutory construction is to ascertain and give effect to the intent of the legislature. [Citation.] The best indication of legislative intent is the statutory language given its plain and ordinary meaning. [Citation.] When statutory language is plain and unambiguous, the statute must be applied as written without resort to aids of statutory construction. [Citation.] We may not depart from a statute's plain language by reading into it exceptions, limitations, or conditions the legislature did not express. [Citation.] Courts should not attempt to read a statute other than in the manner it was written." *Id.*

¶ 13    There are several problems with defendants' interpretation of section 7(1)(n). First, the plain language of the statute demonstrates that only records related to adjudications are exempt from disclosure. The statute does not define "adjudication," however, so we may examine the dictionary to determine its ordinary meaning. See *Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907, ¶ 48. "Adjudication" is generally understood to involve a formalized legal process that results in a final and enforceable decision. See, *e.g.*, Black's Law Dictionary 42 (7th ed. 1999) ("The legal process of resolving a dispute; the process of judicially deciding a case."). Given that section 7(1)(n) also refers to employee grievances and disciplinary cases, the statute appears to be limited to documents connected to formalized legal proceedings that involve only those two issues and that result in a final and enforceable decision.

¶ 14    Investigations into CRs, however, are not adjudications of either an employee grievance or a disciplinary case. When a public citizen files a complaint against a police officer, either CPD's internal affairs division (IAD) or the "Independent Police Review Authority" (IPRA) begin investigating the complaint. The CRs are an effort to gather factual information about the complaint, but they do not involve any formalized legal proceedings. While the record indicates that a substantiated complaint can result in disciplinary proceedings being instituted

---

[1]Defendants also raised an argument that the CRs would be exempt under the 2009 FOIA section 7(1)(b)(ii). However, defendants conceded at oral arguments that this would only apply should we decide to apply the 2009 FOIA statute.

against an officer, those proceedings are a different matter entirely. The CRs are instead part of an investigatory process that is separate and distinct from disciplinary adjudications.

¶ 15 Still, even though the CRs are not themselves adjudicatory, they could be exempt if they are "related to" an adjudication. Defendants read this provision expansively, arguing that the CRs are related to adjudications because they can, if substantiated, subject an employee to disciplinary proceedings. Defendants point out that section 7(1)(n) previously existed as section 7(1)(u) in a prior version of the statute. In the amended provision, the phrase "related to" replaced "information concerning." On its face this does not seem to be a substantive change, given that there is no real difference between the plain meaning of the phrases "information concerning" and "relating to." See, *e.g.*, *Bloomberg L.P. v. United States Food & Drug Administration*, 500 F. Supp. 2d 371, 377 (S.D.N.Y. 2007). However, applicable here is the rule that an amendment to a statute creates a presumption that the amendment was intended to change the law, and as defendants note, this provision was changed. See *People v. Hicks*, 119 Ill. 2d 29, 34 (1987).

¶ 16 Defendants' reading of the section is based on the premise that the new section 7(1)(n) was the legislature's response to our decision in *Gekas v. Williamson*, 393 Ill. App. 3d 573, 575 (2009). In that case, the plaintiff filed a FOIA request for complaint records against a police officer, and his request was denied. We determined that records such as CRs are not exempt under FOIA. Shortly thereafter, the legislature amended FOIA, changing section 7(1)(u) to section 7(1)(n) and substituting the words "information concerning" with "relating to." Defendant contends that the legislature's changes to the statute were a direct effort to overrule *Gekas*.

¶ 17 There are several reasons to conclude that the amendment was not a response to *Gekas*. First, the old version of section 7(1)(u) applied to both students and employees, and the amendment merely consolidated education exemptions under a different subsection, and moved the employee-related exemption and changed the language slightly. See Pub. Act 96-542 (eff. Jan. 1, 2010). There is no indication in either the text of the statute or its legislative history that the change was intended to affect the meaning of the section as it related to employees. If the legislature intended to overrule *Gekas* and exempt CRs from disclosure by adding section 7(1)(n) to FOIA, it chose a very opaque and convoluted method of doing so. For 30 years section 7(1)(u) existed in nearly identical form and was never interpreted to exempt a public body's investigations into citizen complaints of police misconduct.

¶ 18 This is important because the rules of statutory construction also hold that "[w]here the legislature chooses not to amend a statute after a judicial construction, it will be presumed that [the legislature] has acquiesced in the court's statement of the legislative intent." (Internal quotation marks omitted.) *Wakulich v. Mraz*, 203 Ill. 2d 223, 233 (2003). When it amended FOIA, the legislature made no reference to *Gekas*, which implies that the amendments were not intended as a response to our decision in that case. This was the conclusion reached in *Rangel v. City of Chicago*, in which the Northern District of Illinois considered the issue and found that "there is no basis to conclude that this amendment, enacted approximately one month after *Gekas* was decided, was an effort to broaden the scope of the adjudication exemption for public employees, and certainly not to exempt CR register documents." *Rangel*

*v. City of Chicago*, No. 10 C 2750, 2010 WL 3699991, at \*3 (N.D. Ill. Sept. 13, 2010).[2] Notably, section 7(1)(n) was not at issue in *Gekas*. Instead, the defendants claimed that the documents were exempt under several other provisions of FOIA. See *Gekas*, 393 Ill. App. 3d at 582-90.

¶ 19    Moreover, defendants' interpretation is at odds with the purpose of FOIA, which "is to open governmental records to the light of public scrutiny." (Internal quotation marks omitted.) *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 405 (2009). It is well settled that "FOIA is to be accorded liberal construction," and "the statutory exemptions from disclosure must be read narrowly." (Internal quotation marks omitted.) *Id.* at 411. Defendants' interpretation of "relating to" would give section 7(1)(n) an expansive interpretation and render a broad category of public documents immune to public scrutiny. That is contrary to the intent of FOIA.

¶ 20    Finally, defendants claim that CRs are the start of the adjudicatory process and that without them a proper adjudication could never exist. This argument mischaracterizes the nature of CRs. The CRs are created to investigate reports of police misconduct, and any disciplinary adjudication that may take place as a result of the CRs comes later. While information obtained during the investigation may potentially be introduced during adjudication of a disciplinary case, a CR does not initiate that adjudication, nor can CRs themselves be considered disciplinary. Indeed, if a complaint is unsubstantiated, then no disciplinary adjudication ever occurs and that CR necessarily cannot "relate to" an adjudication. This is a further indication that CRs are distinct from disciplinary adjudications and therefore not encompassed by section 7(1)(n).

¶ 21    Defendants provide us with a line of cases to support their argument of a broad reading of the term "relating to," but these cases do little to buttress their claim. When examined, the cases are inapposite. For example, in *Goff v. Teachers' Retirement System*, 305 Ill. App. 3d 190, 195 (1999), the court held the phrases " 'relating to,' 'arising out of,' and 'in connection with' are very broad terms." However, those terms were in the context of a teacher's after-school criminal sexual abuse of students that "related to" his position as a teacher in a role that he exploited to take advantage of his students. See *id.* at 196. The case did not purport to interpret FOIA. Similarly, defendants cite to *BlueStar Energy Services, Inc. v. Illinois Commerce Comm'n*, 374 Ill. App. 3d 990 (2007), and *Kopchar v. City of Chicago*, 395 Ill. App. 3d 762 (2009). These cases did construe FOIA exemptions in a broader way on the facts of those cases, but they did not analyze the term at hand. Moreover, there are other cases that interpret "relating to" in a narrow way in a variety of contexts. See, *e.g.*, *Romano v. Municipal Employees Annuity & Benefit Fund*, 402 Ill. App. 3d 857 (2010); *Lopez v. Illinois Liquor Control Comm'n*, 120 Ill. App. 3d 756 (1983).

¶ 22    In sum, section 7(1)(n) does not exempt CRs from disclosure. Under any reading of the statute, CRs do not constitute an "adjudication" or either an employee grievance or a disciplinary case. Further, the phrase "related to" must be read narrowly, and in the context of FOIA, CRs are not "related to" disciplinary adjudications in a way that might exempt them from disclosure.

---

[2]Given the lack of controlling Illinois precedent on this issue, there has been a healthy debate in the federal district courts regarding the meaning of section 7(1)(n) as applied to CRs. See, *e.g.*, *Martinez v. City of Chicago*, No. 09 C 5938, 2012 WL 1655953, at \*2 (N.D. Ill. May 10, 2012) (listing cases).

¶ 23 Alternatively, defendants contend that the CR files are exempt under section 7(1)(f) of FOIA, which exempts from disclosure "[p]reliminary drafts, notes, recommendations, memoranda and other records in which opinions are expressed, or policies or actions are formulated." 5 ILCS 140/7(1)(f) (West 2010). Defendants argue that CR files generated during preliminary investigations should be exempt in their entirety under section 7(1)(f) because they may contain "recommendations to the Superintendent regarding whether an officer should be disciplined because of his actions."

¶ 24 Section 7(1)(f) has been found to be "the equivalent of the federal deliberative process exemption, which applies to predecisional materials used by a public body in its deliberative process." (Internal quotation marks omitted.) *Day v. City of Chicago*, 388 Ill. App. 3d 70, 79 (2009). This exemption protects the opinions that public officials form while creating government policy. It does not protect factual material or final agency decisions. See *id.* CRs contain citizens' allegations of police misconduct and CPD's investigation into the facts of those allegations. While it is possible that CRs might contain recommendations that could potentially fall under the exemption, it is well settled that "[o]nly those portions of a predecisional document that reflect the give and take of the deliberative process may be withheld." *Public Citizen, Inc. v. Office of Management & Budget*, 598 F.3d 865, 876 (D.C. Cir. 2010). Indeed, we have previously examined this exact issue. In *Watkins v. McCarthy*, a factually similar case, we held that to the extent that a CR file might include policy recommendations from an investigator regarding the complaint and its resolution, an *in camera* review may be necessary to determine whether and to what extent the exemption applies. See *Watkins v. McCarthy*, 2012 IL App (1st) 100632, ¶¶ 37-38.

¶ 25 *Watkins* is clear that at a minimum, section 7(1)(f) does not allow a public body to withhold an entire file on the basis that some portions of it may fall under the deliberative-process exemption. Should defendants wish to claim this exemption for portions of a CR file, that is an issue that can be discussed on remand.

¶ 26 The remaining issue is whether the RLs are exempt from disclosure. Initially, we note that the circuit court found that defendants forfeited their argument that section 7(1)(n) applies to the RLs. The first appearance of that argument came in defendants' motion to reconsider the circuit court's summary judgment ruling. A party may not raise a new legal or factual argument in a motion to reconsider. See *North River Insurance Co. v. Grinnell Mutual Reinsurance Co.*, 369 Ill. App. 3d 563, 572 (2006). The general rule is that arguments not raised in the trial court are deemed waived and cannot be argued for the first time on appeal. See *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486 (1985). However, "[t]he waiver rule is an admonition to litigants and not a limitation upon the jurisdiction of a reviewing court." *Barnett v. Zion Park District*, 171 Ill. 2d 378, 389 (1996). Given the likelihood of further litigation on this issue, we choose to review the issue.

¶ 27 Defendants' initial argument is that the RLs are exempt from disclosure under sections 7(1)(f) and 7(1)(n) because they are simply summaries of CRs. As we found above, however, CR files are not exempt from disclosure under these sections. The RLs are not exempt from disclosure for the same reasons, and we need not revisit them here.

¶ 28 There is one difference between the CRs and the RLs, but it is immaterial. While the CRs are original documents created in response to citizen complaints, the RLs were retrieved from a CPD database and were compiled for purposes of discovery in an unrelated federal case. Defendants contend that the RLs were therefore not created in the ordinary course of business,

and are thus not disclosable because they are not encompassed by FOIA's definition of "public records."

¶ 29    Defendants' narrow interpretation of what constitutes a public record is not supported by the plain language of the statute. FOIA section 2(c) states:

> " 'Public records' means all records, reports, forms, writings, letters, memoranda, books, papers, maps, photographs, microfilms, cards, tapes, recordings, electronic data processing records, electronic communications, recorded information and all other documentary materials pertaining to the transaction of public business, regardless of physical form or characteristics, having been prepared by or for, or having been or being used by, received by, in the possession of, or under the control of any public body." 5 ILCS 140/7(2)(c) (West 2010).

CPD prepared, used, possesses, and controls the RLs. Under any reading of section 2(c), the RLs are subject to FOIA and must be disclosed unless an exemption applies.

¶ 30    Defendants alternatively argue that the protective order in federal litigation relieved them of their duty to disclose the RLs. However, the Seventh Circuit stated expressly in *Bond* that the protective order did not interfere with the plaintiff's ability to compel the defendant to disclose the documents. See *Bond*, 585 F.3d at 1076 n.10. The protective order in *Bond* is similar to that in *Moore*. Neither protective order has any bearing on defendants' duty to disclose the RLs pursuant to a FOIA request.

¶ 31    Defendants again point us to *BlueStar Energy Services*, 374 Ill. App. 3d 990, which defendants contend stands for the proposition that a settlement agreement is not subject to disclosure under FOIA. In that case, the agency had possession of the agreement only because the agency had compelled its production from the regulated entity during regulatory proceedings. The ICC agreed to treat the disclosures as confidential, and we held the documents were exempt from FOIA because ordering their disclosure would have a "chilling effect" on the receipt of similar information in the future. Defendants argue that disclosure of the RLs in this case will similarly have a discouraging effect on government agencies in agreeing to produce documents in future discovery for fear that they will be subject to FOIA later. But defendants' argument on this point falls apart when *BlueStar* is read in full: the settlement agreements in *BlueStar* fell within FOIA's trade secrets exemption, and the case did not turn squarely on the assurances of confidentiality given in the course of discovery. The case is thus inapposite.

¶ 32    In sum, neither the CRs nor the RLs are exempt from disclosure under FOIA. The circuit court's order granting summary judgment in favor of plaintiff on the RLs is therefore affirmed, but its order granting summary judgment in favor of defendants on the CRs is reversed. There are, however, two outstanding issues that require remand. First, defendants contended at oral argument that some portions of the CRs are subject to the deliberative-process exemption. If defendants claim that certain portions of the CRs should be redacted under this exemption and plaintiff does not agree to the proposed redactions, then the circuit court must resolve the issue after an *in camera* inspection. Importantly, the burden is on defendants to demonstrate that portions of the document are exempt under the deliberative-process exemption. See *Watkins*, 2012 IL App (1st) 100632, ¶ 13 (noting that the public agency bears the burden of establishing that public records fall within an exemption, and stating that "[t]o meet this burden and to assist the court in making its determination, the agency must provide a detailed justification for its claimed exemption, addressing the requested documents specifically and in a manner allowing for adequate adversary testing" (emphasis and internal quotation marks omitted)).

¶ 33     Second, FOIA includes a provision regarding attorney fees. It reads in relevant part, "[i]f a person seeking the right to inspect or receive a copy of a public record substantially prevails in a proceeding under this Section, the court may award such person reasonable attorneys' fees and costs." 5 ILCS 140/11(i) (West 2008). The circuit court found that plaintiff did not substantially prevail in his case because he was only successful in obtaining the RLs, and thus the circuit court declined to award attorney fees. In light of our holding here, however, the attorney fee issue is to be revisited on remand.

¶ 34     Affirmed in part and reversed in part; cause remanded with directions.

¶ 35     JUSTICE DELORT, specially concurring.

¶ 36     I join the opinion in full, with the exception of paragraph 10. That portion of the majority opinion deals with the circumstance when an individual makes a FOIA request when a particular version of FOIA is in place, but the legislature amends the FOIA law before the governmental body fulfills the request. In particular, the defendants here suggest that the new version of FOIA now in place is less generous toward FOIA requestors such as the plaintiff here, and that it allows governmental bodies to release fewer records than they would be required to under the previous version of the law. I would instead find that the plaintiff's rights to the records vested when he made the request and could not later be rescinded by legislative action. To hold otherwise would encourage governmental bodies to stall FOIA responses until some future time when the legislature might amend the statute in a favorable manner, or to actively lobby for an amendment which shields particular embarrassing records from disclosure. It can be suggested that, even if a legislative amendment allowed certain records to be shielded from public disclosure, civil penalties could still be awarded against the governmental body under section 11(j) (5 ILCS 140/11(j) (West 2010)) for willful and intentional failure to comply with FOIA in the first instance. I believe, however, that only release of the actual records requested would truly fulfill the intent and purpose of FOIA.

¶ 37     I further believe that there is hardly a perceptible difference between the old and new versions of FOIA as they apply to this case, and that the change is basically stylistic rather than substantive. Accordingly, I agree with the remainder of the majority's analysis and with the ultimate result.