**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210100-U

Order filed August 11, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| DREW PETERSON, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Petitioner-Appellant, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-21-0100 |
| | ) | Circuit No. 16-MR-1993 |
| THE BOARD OF TRUSTEES OF THE | ) | |
| BOLINGBROOK POLICE PENSION FUND, | ) | Honorable |
| | ) | Theodore J. Jarz, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court.
Justices Daugherity and Hauptman concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  Pension board's order terminating a police officer's pension benefits was upheld on appeal because the board's determination that the police officer's murder of his ex-wife was related to, arose out of, or was in connection with his service as a police officer was not erroneous and supported by the manifest weight of the evidence.

¶ 2     The petitioner police officer's pension benefits were terminated after he was convicted of the murder of his ex-wife. The petitioner sought administrative review, and the trial court ruled in favor of the pension board. The petitioner appealed to this court.

¶ 3                                I. BACKGROUND

¶ 4        On May 7, 2009, the petitioner, Drew Peterson, was charged with the first-degree murder of his former wife, Kathleen Savio, who had been found dead in her bathtub on March 1, 2004. Peterson was tried and convicted in 2012, sentenced to 38 years in prison, and his conviction was affirmed on appeal. *People v. Peterson*, 2015 IL App (3d) 130157, *aff'd*, 2017 IL 120331, *as modified upon denial of reh'g* (Jan. 19, 2018).

¶ 5        From 1977 until his retirement on November 9, 2007, Peterson had been a police officer in the Bolingbrook Police Department. On November 30, 2007, the respondent, the Board of Trustees of the Bolingbrook Police Pension Fund (Board), granted Peterson a regular retirement pursuant to section 3-111 of the Illinois Pension Code (the Code) (40 ILCS 5/3-111 (West 2018)). When Peterson was later charged with Savio's murder, he was receiving those retirement benefits. After Peterson was convicted, the Board voted to retain an attorney to investigate whether Peterson's felony conviction would cause him to be divested from his retirement benefits pursuant to section 3-147 of the Code (40 ILCS 5/3-147 (West 2018)). Based on the results of that investigation, Peterson was notified that there existed sufficient evidence for the Board to consider terminating his benefits. The Board then held hearings on the matter. In a decision and order dated July 7, 2016, the Board terminated Peterson's benefits pursuant to section 3-147 of the Code, finding that Peterson used his specialized police training, skills, and abilities to plan and commit Savio's murder. The details of the Savio murder and investigation are described in our prior appellate court opinion affirming Peterson's conviction, but relevant to this order, the Board made some specific factual findings. The Board found that prior to Savio's murder, during a ride-along while Peterson was on duty, Peterson had offered Jeffrey Pachter, a former coworker, $25,000 "to take care of" Savio. On the day Savio's body was discovered, Peterson had called the locksmith, Robert Akin,

Jr., on Akin's personal cell phone to ask for a wellness check on Savio. Akin was usually contacted by dispatch for wellness checks. Peterson was in uniform when he met Akin at Savio's door. Akin would not have performed the wellness check without a police officer or other person of authority present. Peterson requested professional courtesy from one of the first responders, telling him that Savio was his ex-wife. Also, as a professional courtesy, Peterson was allowed to be present for the interview of his fourth wife, Stacy Peterson, which was conducted in their home. Peterson was interviewed in the lunchroom of the Bolingbrook Police Department. A few years after Savio's death, but before Peterson had been charged with the murder, Peterson told Donna Badalamenti, a friend of Stacy Peterson's aunt, that he was well-trained and could get away with murder. Peterson's police training records indicated that he had training in evidence handling and crime scene investigation.

¶ 6        Peterson sought administrative review of the Board's decision. On review, Peterson filed a motion to supplement the record, which the trial court granted in part and remanded the case to the Board for the taking of additional evidence. Pursuant to that order, the Board held hearings on remand to determine what, if any, supplemental exhibits would be admitted into the administrative record. The Board admitted a number of supplemental exhibits, but it declined to admit the entire transcript of Peterson's criminal trial, only admitting the remaining portions of the transcripts of testimony by any witness who was at least partially considered by the Board in the initial hearing. The Board passed a unanimous motion to stand on the Board's initial decision and order, finding that nothing in the supplemental exhibits caused the Board to alter, amend, or modify its original order. Specifically, the Board found that Peterson's felony conviction for the murder of Savio was related to, arose out of, or was in connection with Peterson's service as a Bolingbrook police officer, and there was a nexus between his conviction and his employment.

¶ 7    Peterson filed an amended petition for administrative review, arguing that the Board's decision was against the manifest weight of the evidence. The trial court entered an order on February 9, 2021, affirming the decision of the Board as not against the manifest weight of the evidence. Peterson filed the instant appeal.

¶ 8                                    II. ANALYSIS

¶ 9    Peterson argues that the Board's decision to terminate his pension benefits was against the manifest weight of the evidence, contending there was no nexus between the felony and Peterson's duties as a police officer. Peterson argues that the Board failed to cite any facts that establish that Peterson's role as a police officer had any connection to the murder. Further, Peterson argues that the Board's interpretation of the statute is a question of law, subject to *de novo* review. The Board contends that its conclusion that Peterson's felony murder conviction was related to, or arose out of and in connection with, his service as a police officer was not clearly erroneous. The Board argues that the record demonstrates that Peterson engaged in a continuing course of criminal conduct to plan and to murder Savio and used his specialized police knowledge, training, and experience to avoid prosecution.

¶ 10    A police officer shall have his pension benefits terminated if he "is convicted of any felony relating to or arising out of or in connection with his or her service as a police officer." 40 ILCS 5/3-147 (West 2018). There must be a "clear and specific connection between the felony committed and the participant's employment" to justify the forfeiture. *Taddeo v. Board of Trustees of the Illinois Municipal Retirement Fund*, 216 Ill. 2d 590, 597 (2005). While every felony conviction is a violation of a police officer's oath of office, it is not a sufficient nexus, standing alone, to deprive a police officer of his pension. *Devoney v. Retirement Board of Policemen's Annuity & Benefit Fund for City of Chicago*, 199 Ill. 2d 414, 422 (2002) (interpreting the nearly

4

identical section 5-227 of the Code, 40 ILCS 5/5-227 (West 2018), applicable to cities with populations over 500,000). Rather, there must be a nexus between the committed felony and duties as an officer. *Id.* On administrative review, we review the decision of the administrative agency, not the determination of the trial court. *Hendricks v. Board of Trustee of the Police Pension Fund*, 2015 IL App (3d) 140858, ¶ 9 (citing *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006)). The factual findings and conclusions of the administrative agency " 'shall be held to be prima facie true and correct.' " *Abbate v. Retirement Board of Policemen's Annuity and Benefit Fund of City of Chicago*, 2022 IL App (1st) 201228, ¶ 33 (quoting 735 ILCS 5/3-110 (West 2018)). On review, we defer to those factual findings and conclusions unless they are against the manifest weight of the evidence or there is no competent evidence in the record to support the findings. *Id.* The ultimate decision by the administrative agency is a mixed question of law and fact, which we review for clear error. *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 143 (2006).

¶ 11        As noted above, the Board found a number of key facts to be true: Peterson had offered money to Pachter in 2003 to take care of Savio, while on duty and in his squad car; Peterson told a friend of Stacy Peterson's relative that he was well-trained and could get away with murder; Peterson was in uniform and called the locksmith on his personal cell phone for the wellness check on Savio; Peterson was allowed to be interviewed at the police station where he worked; Peterson was allowed to sit next to Stacy Peterson during her interview, conducted in the basement of their home; and Peterson had evidence training and specialized restraint training. The Board concluded that Peterson orchestrated the discovery of Savio's body while he was on duty, a fact that played a critical role in finding that Savio died by accident. We defer to those findings unless they are against the manifest weight of the evidence, meaning that the opposite conclusion is clearly

5

evident. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007) (citing *Marconi*, 225 Ill. 2d at 532). In this case, the opposite conclusion is not clearly evident.

¶ 12    Having concluded that the Board's factual findings were not manifestly erroneous, we turn to the Board's interpretation and application to section 3-147 of the Code. Under that section, the key is whether there is a nexus between the felony and the officer's performance of his official duties. *Abbate*, 2022 IL App (1st) 201228, ¶ 44 (interpreting the similar section 5-227 of the Code and citing *Devoney*, 199 Ill. 2d at 419). In this case, the Board concluded that Peterson's scheme to murder Savio, the act of the murder, and Peterson's attempts to conceal the murder were driven by his specialized knowledge from being a police officer and arose out of his duties as a police officer. Also, Peterson exploited his position as a police officer to secure access to the crime scene and his use of professional courtesy was central to avoiding detection and prosecution. The Board found that there was a sufficient nexus between the crime and Peterson's service as a police officer for forfeiture of his pension under any of the three alternative tests that the courts have found applicable. See *Abbate*, 2022 IL App (1st) 201228, ¶ 44 (discussing the "but for," the "substantial factor," and the related "in some way" tests). Peterson argues that his actions were personal; Savio did not marry him because he was a police officer. Peterson also argues that the Board was wrong to find that Peterson's police training and experience were in any way related to Savio's murder by drowning.

¶ 13    Considering the totality of the evidence presented to the Board, and its factual findings, we find that the Board's conclusion that Peterson's felony conviction was related to or connected to his service as a police officer was not clearly erroneous. The evidence indicates that Peterson killed Savio and then used his position to orchestrate the discovery of her body and direct the investigation, all in order to avoid detection and prosecution.

¶ 14                                   CONCLUSION

¶ 15        The judgment of the circuit court of Will County is affirmed.

¶ 16        Affirmed.